143932 United States of America v. Lewis C. Powell II. Oral argument not to exceed 15 minutes per side. Ms. Ward for the defendant appellant. Good morning, your honors. Good morning, Ms. Ward. Vicki Lynn Ward for the appellant Lewis Powell. There are six issues addressed in my brief. I'd like to focus on the first three major issues. One, that the court erred when it designated Lewis Powell a career offender. Second, that the court erred when it failed to find Mr. Powell's criminal history, was over-represented, and the court's decision to double-count Mr. Powell's offense conduct was also erroneous. Pursuant to the federal sentencing guideline 4A1.282, the court determined that Lewis Powell's first offense was an intervening arrest. The defense presented evidence that Mr. Powell was never arrested in that case. The guideline is clear. It is not ambiguous. It states that a defendant must be arrested for the first offense prior to committing the second. He was issued a summons not by- But we get that that's the distinction here. Yes. Summons versus arrest. Yes. All right. And even this court has indicated in U.S. v. Smith, it's set forth what a formal arrest is. U.S. v. Smith, 549F3rd. Well, I mean, if I can just kind of skip ahead a little bit, let's say you're right about that. I mean, there was no seizure. Isn't it harmless, ultimately, because he still gets to criminal history Category 6 because of his many other convictions? No, actually not. The PSR says he's got 20 criminal history points, if I recall, right? And he needs 13 to get to Category 6. So you'd have to show that at least, I guess, eight of those points are incorrect. Yes. Yes. And, in fact, the defense counsel did argue that his criminal history was overstated. There were two indications in the PSR number 91, I believe it was 91, where he had a D.U.S. and a D.U.I., where he was issued citations. Right. And he was never arrested. Right. There was no intervention, yes, on both. So you're probably right about that. He was counted, and the court counted those as well. So they just count once, not twice, is what should happen there. Yes. It was counted as a, it wasn't counted as a single sentence, but separate sentences. Right. And let's say we agree with you that that's just one sentence. Yes. He should have had one. And there were a number of other misdemeanor counts. His record consists mostly of, the majority of his record is drunk driving, driving under suspension, all of which were alcohol-related, all minor misdemeanors. He only had three felony convictions, one which was a drug abuse F-5, which is not scored, and then these two low-level assault cases, which were felony fours, one on a police officer, and just a regular aggravated assault. And he is not, even though his record has a number of convictions, none of them are crimes of violence other than the two assault cases that are low-level. This isn't about crimes of violence at this point. It's about whether he gets 13 points, as opposed to two priors, crime of violence. Right. Now, as I indicated, the majority of those are 10 years, over 10 years old. And then we had a number. They still count, right? I'm sorry? They still count towards the 13, don't they? Well, they do count towards. Stuff that gets complicated. Those do. And then there were the ones that were argued below in the sentencing memorandum about the two. There were at least six that were double-counted, which should have been counted as a single sentence. And even so, the court could have looked at his criminal history and indicated. And the court did recognize that, well, your record is not extremely, I can't recall the exact word, not horrific. That's what the court used. Your record is not horrific. And the court had discretion to consider that his record was not horrific. It did not. As a matter of fact, the court sentenced him as if he was the drug kingpin in this case. His sentence, Mr. Powell's sentence, is extremely disproportionate to any of the other defendants in this case, which were numerous, including the top-tier defendant. He received way less time. And along with the fact that the court double-counted his charge for the gun cases, he received eight points for that. And his conduct was the same. He should have received four instead of eight. This court has even indicated, and the government cited, U.S. versus Sweet, which really is in favor of the appellant. This court distinguished and held that the one enhancement was for trafficking in weapons. The second was for distributing heroin when the defendant traded firearms for drugs. In this case, Mr. Powell sold guns. That was it. There was no connection to drugs, just one course of conduct. And this court indicated that selling the firearms did not facilitate another offense as in Sweet. In Sweet, selling the firearms facilitated another offense. In this case, it did not. He was engaged in one course of conduct, which was trafficking in the guns. Nothing related to drugs at all. Well, let me ask you, as to the two assault convictions, I mean, one issue is there wasn't an intervening arrest. There was the intervening just a summons. And there's a split, isn't there, between the Seventh Circuit and the Ninth Circuit as to whether a summons should be deemed equivalent to an arrest? Your Honor, even though the government indicates that Leo Felix is not side- That's the Ninth Circuit. That's the Ninth Circuit. And they do make a good point, a common sense point. When we're pulled over by a police officer, given a ticket, and sent on our way, that's not equivalent to an arrest. You get a ticket. You're not in custody. You don't get transported. You're not handcuffed. If that was the case, then this sentencing guideline is rendered useless, and there's no need to have 4A1.2 because everything is an arrest. And you'll have everybody has an intervening arrest because traffic tickets and summons now become an arrest, whether you're in custody or not. The Seventh Circuit says, well, that's okay because for the purpose of whether you're a career offender or not, you've sort of been put on notice that, hey, what you did the first time was not nice. Right. Before you commit your second offense. And the Seventh Circuit is doing exactly what was argued in the Ninth Circuit, making this sentencing guideline pointless. But this court, in the Sixth Circuit, here in U.S. v. Smith, indicated that this kind of inquiry is fact sensitive, that the factors include transporting a detainee, significant restraint on movement, physical confinement, and in this case, Smith was handcuffed and transported. That was ruled here in this court. Did Smith involve the question of whether the person, Smith, was a career offender or not? Yes, it discussed intervening arrest. Absolutely. It discussed what an arrest is. That was the definition. The court stated that whether an arrest occurred is a fact sensitive inquiry. Now, let me say this. The government admitted during the sentencing that Mr. Powell was not arrested at page 404 in the sentencing transcript. Also, it relies on U.S. v. Hartfield, which was decided in this court in 1987. But subsequent, we have Smith that this court decided in 2008, which indicated that the totality of the circumstances should be considered and these factors that I just enumerated should be considered as to a formal arrest. So, this court seems to be in line with the Ninth Circuit in U.S. v. Lil Felix, that getting a citation or receiving a summons and the exhibits that were submitted to the court during sentencing showed, the judge indicated, summons nor arrests. But the court just ignored those. It immediately decided career offender based on the argument that the government made, which really makes no sense that the second arrest is the intervening arrest when the sentencing guideline is clear that you must be arrested in the first offense. And so, their argument makes no sense and totally strips the guideline of any meaning whatsoever. And so, why have it? And I believe there's a case that indicated that if a decision renders a guideline meaningless, then the decision has no- a national uniform definition. And if there's still any ambiguity, then the rule of lenity should be applied, that it should be ruled in favor of the defendant. Also, the court did not consider any of the arguments that defense counsel made with regard to 3553A. It merely glossed over it, did not give any kind of consideration to it, didn't enumerate it in the decision. Although the court is not required to give every argument in detail consideration, it should show that it showed some consideration to Mr. Powell's situation. There was evidence indicating his history from being a child of being abused, drugs throughout his life with his parents. His mother was addicted to crack. They moved around. He was shipped from one foster home to another while his sister was placed in another foster home. Then they moved to Cleveland where he lived with his father. His home was firebombed while he was a kid due to his father's involvement with a violent offense with his brother. And Mr. Powell was a child. Then he fathered a child at a young age by being abused by a grown woman. Well, he had 19 children by 15 women, right? The court focused mostly on him fathering 19 children, which is a lot but not a crime. Not considering his whole background of being exposed to drugs, being exposed to his mother bringing drug dealers into the home as a kid, teaching him how to sell drugs as a child. There are a lot more things that could be said about his background contributing, but the time is up. Oh, thank you. And so we'll close with that if you would. Thank you, Your Honor. Thank you for your argument. May I please have the court? Dan Riedel on behalf of the United States. I'd like to talk first about the appellate waiver on this case because the appellate waiver is obviously key to the government's argument here, or at least starting, although I can certainly also talk about the other issues raised by defendant. But if defendant loses on the appellate waiver, which she should here, since there was a properly signed appellate waiver in this plea agreement, it was fully explained to the defendant. He knowingly and voluntarily entered into that agreement knowing that the appellate waiver was in there. Then the rest of the defendant's claims fail. Except you will talk about where he asked the court point blank, I can appeal this career offender, and the court said, sure you can. And as much as there's a good argument here about the career offender, so where does that leave your stance? Your Honor, this court has already considered essentially those exact facts because if you consider, that exchange happened at the sentencing hearing. So the change of plea has already taken place. We're months later. The agreement has already been entered into. We're months later at the sentencing hearing. In fact, we're at the very, very end of the sentencing hearing. The sentence has been handed down. The Bostick question has been asked, and both counsel have already said no to the Bostick question. And then the defendant chimes in with, wait, can I appeal my career offender status? The judge says, yeah, sure, talk to your attorney. But this court has already addressed that exact issue in United States v. Swanberg, which is cited in the government's brief, which also cites United States v. Fleming. And both of those cases stand for the proposition that a mistake by this district court at sentencing regarding what a defendant may appeal does not defeat a valid and enforceable. The question is, is it a mistake? Because if he clearly had the right under the plea waiver to appeal his criminal history category, and if being a career offender not directly affects your criminal history category, doesn't that really by any logic say he can attack the career offender status? It doesn't, Your Honor. Although the two are related, they're not the same. And this court has already- Well, if you're a career offender, you're automatically Category 6, right, of criminal history. That's correct, Your Honor. Well, so- Why is it not important? This court has already considered that exact issue in a case in the government's- Well, what's the explanation? We can get the citation later, but what is the explanation for why he can't challenge criminal history when that is an exception to the waiver? Because he did not reserve that right. The plea agreement specifically says what rights he reserved. And he could have reserved the right to appeal his career offender status. Well, let's-I mean, he did reserve the right to appeal a designation. He did preserve the right to appeal the court's determination of his criminal history category. Right. And if the court uses the career offender determination to determine his career-his criminal history category, obviously he can challenge-he can challenge the means the court uses to get to that criminal history regardless of what they are. I mean, what am I missing? Your Honor, he had the opportunity to reserve that right, and he did not negotiate, and he did not reserve that right. My point is it would seem like he did reserve that right actually more broadly when he said, I'm reserving my right to challenge my criminal history. To reserve the right to challenge the court's computation of his criminal history category. So in this case is a good example. This is a case where the defendant believed that he could convince the district court-or it could be argued from the record- that the defendant believed that he could convince the district court that he was not, in fact, a career offender. And if he wins there, if he convinces the district court that he's not a career offender, then he still reserves the right to appeal these other issues. He reserves the right to appeal his- You think that reservation within the waiver is about the career offender particularly as opposed to criminal history category? The opposite. The reservation-he reserves the right to appeal his-the computation of his category. He does not reserve the right to appeal his career offenders category. Okay. I thought your argument was the opposite, that you were focusing on career criminal. No. Only criminal history category. Right. That is the- I know that's what's in there. That is the- But Judge Kethledge's question, of course, is implicit in that calculation is this arguably a mistake with respect to- this mistake with respect to ultimately calculating criminal history category, but by way of, right? Yes. So that's where we're pressing you. I understand. And my response is that it could have been a tactical decision by the defendant, that he believed he could convince the district court he was not a career offender, but he wished to appeal the criminal history category calculation. We construe these waiver agreements against the government, right, when there's some ambiguity? Yes, Your Honor, if there's an ambiguity. I just-I mean, I'm looking at the numbered paragraph 19 that has the exclusion. I don't think it clearly says what you are suggesting it says. I'm just speaking for myself. You might want to address whether, in fact, the criminal history determination was correct by the district court. I will, of course, Your Honor. I would, though, like to point the court to United States v. Grundy, because that is a case with the exact same language that's in the-it is an unpublished opinion, but it uses word for word exact same language that's in the plea agreement, and it's on point with the idea that this court found the defendant may not-did not, using the same language. I mean, we interpret stuff literally every day, and I'm just not seeing clearly what, you know, you're suggesting it says. Then I'd like to move on and discuss. Go ahead, Your Honor. Well, the other-another exception, there were three exceptions in this plea waiver. The other was if the-if his sentence exceeded the maximum end of the guideline range. Now, he was sentenced to 151 months, which was within the guideline range as calculated by the district court, but if we knock out the double counting, you know, of the two assault and make it just one, and if we-I gather under the guidelines a career offender automatically adds one level, so that would come out, and also the government-the Department of Justice had this two-two level reduction in drug offenses, right? So if we do all that, I come up with a calculation to where the criminal history-I mean, the sentencing guideline range maybe is properly calculated would be less than 155 months. So at that point, he'd have the right under the plea waiver to challenge that as well, wouldn't he? Because I came up with a guideline range of 120 to 150 months after you knock out if the career offender doesn't apply, and then he's above that at 155, and then Grundy was-I'm quoting here from Grundy. It's talked about Grundy's 151-month sentence nonetheless falls within the sentencing guideline range for the stipulated offense. Grundy, therefore, cannot appeal under subsection B. But in a way, Your Honor, you're putting the cart before the horse, because what you're saying is basically if we agree that the plea waiver is valid, then this is a within guideline sentence. But if you strike out the appellate waiver and then send it back to the district court for resentencing, now the guidelines are going to be lower, and now we have-and now possibly he has the ability to argue or appeal that issue. But we're not there yet. But it's not really about just whether the plea waiver is valid or not. We're piercing that going down to what did it mean? What did he waive? Right? Right. And so- I think Judge Coates got-I mean, we're not really challenging, I don't think anybody is, the validity of the waiver as far as he voluntarily entered into it. But you've got three exceptions in the waiver, and we're questioning you about why don't two of those exceptions allow him to bring this, and if we agree that the district court erred in not-in counting both assault convictions as double counting, then we have to remand for resentencing, don't we? I understand, Your Honor. And, yes, if you find that he has the ability to appeal his career offender status, then certainly it would get remanded for resentencing. And it can be in the other issues- Only if the criminal history determination is wrong. Yes, that's correct, Your Honor. I mean, just because he can appeal it doesn't mean he doesn't have a six. Correct. He is a natural six. Well, natural, now you're talking, you know, I think you're betrayed. Do you mean by points as opposed to by, you know, three strikes, so to speak? Correct, Your Honor. He has enough points to qualify as criminal history category six, regardless of the career offender status. Right, but it would affect his guideline range, wouldn't it? It would, Your Honor. If nothing else, by the one level, because the career offender status did increase from a 33. And the Department of Justice is reduced by two. He would have qualified for it, which, as a career offender, he was not eligible. That's correct. That's now obviously written into the sentencing guidelines, but, yes. I'm still interested in your best argument for why the waiver encompasses this issue with respect to deleting career offender doesn't get him anywhere. Let's say it's wrong. I'm sorry, ma'am? Okay, well, I thought that you had a good argument to say, irrespective of the potential mistake with respect to his career offender status. Let me put it this way. If you have to think of whether the waiver stands, if you have to think that the career offender was a mistake, then where are you? If I have to think? If you think, even though you disagree, if the career offender should not have been assessed in light of there not being two offenses in the absence of an arrest, intervening arrest, where's your argument then with respect to has he still waived his plea? Did the plea waiver still stand with respect to everything? He would have the ability to argue, yes, the remainder of the plea waiver should still stand because he received a within-guideline sentence, as he did in this case. Perhaps I misunderstood. I apologize. Go ahead. Maybe you'll get where we want to go. No, I don't know. The career offender designation gets him to criminal history six. One could argue that he can still challenge that criminal history change, but it separately gets him to an offense level of 34. What is your position? Let's say that he is entitled to challenge the career offender designation to the extent that it affects his criminal history, and he does so, and it turns out, we say, okay, he shouldn't be a career offender. Is he then able to benefit with respect to the offense level as well? I believe, yes, you are, and that is, I apologize, I did misunderstand the question, and I understand now, yes, he would have the ability because it would be essentially an outside-the-guideline sentence. I appreciate your candid answer on that. But you're saying, but the points don't fix the offense level change, do they? The points, so, I mean, let's say it was a mistake to designate him a career offender, but you say, well, he's a natural six, but that doesn't get him to offense level 34, does it? Correct. He'd be otherwise in offense level 33 prior. So, I mean, if we said he's not a career offender because the intervening arrest just wasn't an arrest, hypothetically, but he's got enough points to be a category six, but that doesn't fix the offense level, would we have to remand at that point? I believe so, Your Honor. I believe so because it would essentially be an outside-the-guideline. I see. Because the offense level would be adjusted. Okay. Well, I appreciate your straight answers, and it's helpful. I would like to address the underlying career offender issue and the intervening arrest issue. And primarily, the argument that I advanced in our brief, that the second arrest qualifies as an intervening arrest, was a poorly conceived argument. I apologize for making it. The correct argument that I should have made was the finding of the district court, which was that the summons, the appearance in court, the setting of a bond, is the equivalent of an arrest. And that's essentially the finding from the Seventh Circuit. Right. That's the Seventh Circuit's theory. Yes, Your Honor. And so then why don't you address counsel's pretty interesting point that it renders superfluous the guideline distinction there. It does not render it superfluous because of the distinction that we have here. And the court can certainly draw a distinction between someone who's merely issued a citation or is merely stopped and someone who appears in court. Someone who makes an appearance in court. So it's not as if you received mail service of a summons. We're not alleging that that should be sufficient notice because there would be too many issues with showing the notice. But here, if we're talking about someone who appears in court, is set a bond, is notified of the fact that he's committed a felony offense, and then commits a new offense, that should be sufficient to qualify as an arrest under the guidelines, because to say anything else would lead to an absurd result. To say otherwise would say that somehow there's a distinction, merely because an officer says you're under arrest and places the handcuffs, that that is different from appearing in court, appearing before a judge, having a bond set. Well, the Sentencing Guidelines certainly could, the Commission could have certainly used a word other than intervening arrest if they wanted to say intervening arrest, citation, or summons. But they don't say that, do they? That's true, Your Honor. It's not in the language. They say arrest, you know, and maybe it's foolish from a policy standpoint, but they say arrest, and so the question is whether it's an arrest. I understand. What they were getting, I mean, it's clear, though, from the nature, what they're getting at is recidivism. What they're getting at is do you commit an offense, find out you're in charge. I don't, I mean, interpret stuff by what they're getting at. I mean, if they say arrest, my question is, well, was there an arrest? It is funny like that. I see my time is up, so I'd ask the Court to affirm. Thank you. Counsel, do you have anything further? Yes. Thank you, Your Honor. Your Honor, with regard to the waiver, Mr. Powell did ask the Court could he appeal his career offender status. He didn't ask his lawyer. He asked the judge. The judge says yes. The government was silent. There's no reliance at that point. It's all over. The BOSTA question has been asked. I mean, first of all, Judge Nugent cannot unwind at this point in a plea agreement or any provision of it. I mean, just by something he says that, you know, frankly is pretty vague, right? Well, Your Honor, the client has to knowingly and voluntarily waive. It was his understanding. That was way before. Except the waiver does not clearly state he cannot appeal his career offender status. The career offender status and the criminal history are interrelated. He becomes a 6 automatically if he's designated a career offender. Now, the government is surmising that the defendant believed he was going to be successful with his argument to the Court that he was not a career offender. That's a fantasy. The client is arguing, hoping that it would be successful, but he's also hoping or knowing based on his agreement that it doesn't end here, that his criminal history category 6, he's automatically designated that as a career offender. But without the career offender, he becomes a 24, particularly if his weapons counts are not double counted and he gets a 4 instead of an 8. Would this Court be concerned that the exceptions to the plea waiver did not specify criminal offender status? It said only criminal history category. You say it's implicit, but it wasn't explicit that he could challenge that or that that would make a difference? It's not explicit that he waives. As the government argued, the waiver is unlimited. That's not true. It doesn't specifically state that he waives career offender and criminal history status. And yet that's what's challenging today. That's the point I'm getting to. How together are they? Because your criminal history is automatically rendered based on a career offender enhancement. And the client understood that, and that's why he wanted to ask the Court specifically, can I challenge this career offender status because it put him in a 6 automatically? Now, if you take that out, he's not automatically a 6 because he gets to challenge these points that he's been given. But if you're right about the scope of the waiver agreement and specifically the exception to it that we've been talking about, then there's no problem, right? Right. I don't believe the waiver is even related to this argument. The rest of the waiver is in place, and that is going to be a problem for you on stuff like, oh, he didn't consider my arguments and so on. With regard to some of the 3553 arguments, yes, but certainly not career offender and his criminal history and the double counting. If this Court agrees with me, oh, thank you. Thank you so very much. It was an honor and a pleasure. Thank you very much. You did a very, very good job, counsel, and I see that you are appointed under the Criminal Justice Act. Yes, ma'am. And the Court thanks you very much for your good work here. Thank you, Your Honor. Thank you so much. We'll consider your case carefully. You'll receive an opinion in due course. Thank you. Are you ready for the next case, please?